# THE STATE v. ELLIS BOSTWICK, Appellant.

### Division Two, November 13, 1912.

1. **INSTRUCTION: Not Made Ground for New Trial.** Unless the appellant called the trial court's attention to the instructions in his motion for a new trial, objections to them cannot be considered on appeal. The trial court must be given an opportunity to correct its alleged errors before the appellate court can be asked to consider them.

2. ———: **Manslaughter: Words as Provocation.** Where defendant was either guilty of murder or killed deceased in self-defense, no instruction for manslaughter in the fourth degree should be given. Insulting epithets alone are not sufficient to reduce murder to manslaughter.

3. **MURDER OF SECOND DEGREE: Evidence.** Deceased had indulged freely in liquor, and was in a dangerous frame of mind, and defendant, with deceased's son-in-law, went to the house where deceased was and which defendant had rented to the son-in-law, in order that the son-in-law might get his hat before going to seek an officer of the law, and said that if necessary he would put deceased out of the house and nail it up, and took with him for this ostensible purpose a claw hammer. Upon reaching the house, deceased was found sitting in a chair, and upon being reproached by defendant for his conduct, an exchange of violent language between them followed; and as defendant was standing at the door and apparently about to leave, deceased approached him and applied to him a vile epithet, and defied any one to drive him out of the house, whereupon defendant struck him on the head with the hammer, inflicting a fatal wound. *Held*, that there was substantial evidence making a case of murder in the second degree, and whether or not defendant is guilty of murder in the second degree was a question for the jury to determine.

4. ———: ———: **Quarrels with a Witness.** Testimony of quarrels and troubles, on the day preceding the homicide at night, between the deceased and a witness who was present when the homicide occurred, is not competent evidence.

5. ———: ———: **Objection Sustained After Answer: Not Withdrawn.** Where the court, after testimony offered by appellant for the purpose of showing that he did not seek an encounter with deceased, but went to the house where the homicide occurred in compliance with the request of persons who

had been driven therefrom by deceased, had been fully detailed, sustained an objection to it, but it was not withdrawn, and this purpose of the testimony clearly appears from other evidence received, no injury to defendant was done by the ruling.

Appeal from St. Francois Circuit Court.—*Hon. Peter H. Huck,* Judge.

AFFIRMED.

*Marbury & Hensley* for appellant.

(1) The Supreme Court will not, ordinarily, weigh the evidence; yet, under the law and the evidence of this case, defendant is not guilty of murder in the second degree. (2) Evidence that materially tended to prove, especially on cross-examination, the threats and attitudes of deceased at the time of the killing should have been admitted. Any trouble had between deceased and his son-in-law, on the day of the killing, tended to prove all transactions of that day, and tended to prove his reasons for attempting to kill his son-in-law and his daughter just prior to the killing and also tended to prove why appellant went to the house of Stegall. Any statement tending to show that appellant did not voluntarily enter into or bring on the trouble, but was earnestly requested by fleeing loved ones to save their lives, is materially competent. State v. Zorn, 202 Mo. 12; State v. Dettmer, 124 Mo. 426; State v. Hicks, 27 Mo. 588; State v. Feeley, 194 Mo. 300.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) The court committed no error in excluding from evidence the arrangements the deceased had with Stegall when they moved into the house occupied by Stegall, for the reason that he was not an accomplice in the offense. Trouble Stegall and deceased had on

their way home from Doe Run was immaterial, as the defendant was not present, nor was Stegall aggressor. The same is true as to the cause of the separation between deceased and his wife. There is no error committed in the court rejecting the testimony as to what Landley told Stegall and his wife about going after Bostwick to quiet the deceased. There is no contention that Bostwick was the transgressor. (2) It is only when there is no substantial evidence to support the verdict that it will be set aside on the ground that the verdict is against the evidence. State v. Espenschied, 212 Mo. 215. (3) The motion for new trial does not complain of the instructions given.

FERRISS, J.—Defendant appeals from a conviction upon an information charging murder in the second degree. The jury found him guilty as charged, and fixed his punishment at ten years in the penitentiary.

The defendant operated a pool room and restaurant in the town of Taylortown, St. Francois county. As agent for the owner, he had rented a house near by to one Stegall, who lived therein with his wife and children, and with whom lived the deceased, who was Stegall's father-in-law. During the day preceding the night of the homicide the deceased had indulged freely in liquor, and was in an ugly frame of mind. He quarreled with Stegall during the day, and on the evening in question frightened Stegall and his family out of the house. After leaving the house, Stegall and his wife and baby went to defendant's place of business, stating to defendant that James Meeker, the deceased, was in a dangerous frame of mind, and was theatening to kill him, Stegall; also that Meeker had a knife which he was prepared to use. Having attempted to get hold of an officer, and failing, Stegall requested the defendant to go with him to his home in order that he might get his hat before going to seek an officer of the law.

Bostwick, the defendant, consented to go with him, saying that if necessary he would put Meeker out of the house and nail it up, and took with him for this ostensible purpose a claw hammer. Up to this point the evidence is not in dispute.

The testimony for the State shows that, upon reaching the home of Stegall, the deceased was found sitting in a chair. The defendant reproached him for his conduct, and there was some exchange of violent language between deceased and the defendant. As defendant was standing at the door, and apparently about to leave, deceased approached him and applied to him a vile epithet, and further defied any one to drive him out of the house, whereupon defendant struck him on the head with the hammer, inflicting a fatal wound.

The defendant's evidence tended to show that the deceased was attempting to cut defendant with a knife when the fatal blow was struck.

The court instructed on murder in the second degree, manslaughter in the fourth degree, and self-defense. Objections are made here to some of the instructions given and the rulings on evidence.

I.   The objections to the instructions cannot be considered here, because the defendant did not call the trial court's attention to them in his motion for a new trial. That motion makes no reference whatever to instructions. We cannot depart from the rule well established in this State that matters will not be considered in this court which are not called to the attention of the court below in the motion for new trial. It is a rule firmly implanted in our jurisprudence that the trial court must be given an opportunity to correct its alleged errors before this court can be asked to consider them. It may be remarked, however, in passing, that the instruction for manslaughter in the fourth degree was a gratuity to the defendant on the part of

trial court, as it is obvious that the case is either one of murder or self-defense, and there is no manslaughter in it. The court proceeded upon the theory that insulting epithets alone are sufficient to reduce murder to manslaughter. This is not the law, as is clearly shown in the opinion by KENNISH, J., in State v. Barrett, 240 Mo. 161.

II. It is urged that, under the evidence, the defendant is not guilty of murder in the second degree. Whether or not he is guilty was a question for the jury. The question for us to determine is, whether or not there was substantial testimony introduced by the State making up a case of murder in the second degree. Clearly the evidence was sufficient. According to the evidence for the State, the deceased made no physical assault upon the defendant, threatened none, and did no more than to apply opprobrious and insulting epithets to him. The killing, under the circumstances as detailed by the State, was, without doubt, murder.

III. The defendant complains of the following ruling of the court. A witness for the State testified as to the vile language used by the deceased, and that there was more or less excitement about the premises, when he was asked this question:

"Q. In fact, you expected the old man to carry out the threat he made to Stegall? A. Yes, sir."

An objection to this was sustained. Obviously this ruling was correct.

Referring to what took place between himself and the deceased as they were returning from Doe Run on the day preceding the night of the homicide, Stegall, while on the stand, was asked this question:

"Q. What trouble or controversies or quarrels, if any, did you have on your way from Doe Run to Flat River?"

Objection to this question was sustained. We cannot perceive any ground upon which the trouble between the deceased and the witness, Stegall, that day, was competent as evidence, and we think the objection was properly sustained. It was clearly shown that Meeker was under the influence of liquor and in an ugly frame of mind that day.

Again, where a witness for the State testified that at the time the family of Stegall left the house, in fear of the deceased, he heard some women screaming, namely, Meeker's wife and daughter, he was asked the question: "What were they saying?" This question was fully answered as follows: "I cannot tell you what they was saying hardly, only that they was hollowing and begging Langley to go down there, that he was going to kill the baby, or something like that, and he said, 'I can't go, I haven't got my pants on; go down and get Bostwick.'"

After this answer was given, the prosecuting attorney objected, and after considerable colloquy between counsel on both sides and the court, the objection was sustained, but the testimony given in answer to the question was not withdrawn from the jury. We cannot perceive any injury to the defendant in this ruling. The question had been answered, and the answer not withdrawn. Furthermore, as to just what the women were saying was not material. The evidence was offered for the purpose of showing that Bostwick did not seek an encounter with Meeker, but went to the house in compliance with the request of parties who had been driven therefrom. All this clearly enough appeared from the evidence received. Nor is it claimed by the State that Bostwick went to the house with a felonious purpose. It may be conceded that Bostwick accompanied Stegall to the house for the sole purpose of putting a stop to the disturbance and without any unlawful intent. After reaching there, however, it appears that his anger was aroused

by the language used by the deceased to a point beyond his control.

. Finding  no reversible error in the record,  the judgment is affirmed.

*Brown, P. J.,* and *Kennish, J.,* concur.